IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                              No. 16-20239-SHM-dkv

DEMARIO ALLEN,

    Defendant.

_____

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS
_____

On October 27, 2016, the grand jury returned an indictment charging the defendant, Demario Allen ("Allen"), with possession of a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g). (Indictment, ECF No. 1.) The charge arises from a warrantless search of a residence located at 4840 Bowen Avenue, Memphis, Tennessee 38122, by the Memphis Police Department ("MPD") based on statements made by a robbery victim and consent by a resident of the home. During the search, the police found a firearm and ammunition allegedly belonging to Allen, along with items taken in the robbery.

Before the court is the June 30, 2017 motion of Allen to suppress items seized during the search of the residence and garage. (Mot. Suppress 8, ECF No. 21.) The government filed a response on July 14, 2017. (ECF No. 23.) The motion was

referred to the United States Magistrate Judge for a report and recommendation. (ECF No. 22.)

The court held an evidentiary hearing on September 27, 2017. At the hearing, the government called five witnesses: Officer Marc Kloek ("Officer Kloek"), Officer Manuel Saldana ("Officer Saldana"), Detective John Hampton ("Detective Hampton"), Officer Theresa Carlson[1] ("Officer Carlson"), and Detective Joshua Stanley ("Detective Stanley"). The government also introduced into evidence two exhibits: a collective exhibit of the consent to search forms, (Ex. 1), and a second collective exhibit of pictures of the house, garage, and items found in the garage, (Ex. 2). Allen did not call any witnesses or enter any exhibits.

At the evidentiary hearing, Allen requested additional time to file a supplemental brief addressing whether the search was invalid because Allen either objected to the search or was unable to object to the search due to his detention.[2] The court

---

[1]Last name formerly Alcover.

[2]Allen attached Exhibit A to his supplemental brief, which is a memorandum written by Detective Stanley indicating, in relevant part, that Burchett told Detective Stanley before consenting to the search that Allen resided at the house with her. (Def.'s Suppl. Mem. Ex. A, ECF No. 38.) Allen relies on this statement to support his argument that the officers violated his Fourth Amendment rights by failing to affirmatively seek his consent in addition to Burchett's consent. (*See id.* at 11-12.) Allen did not properly introduce Exhibit A into evidence during the evidentiary hearing. The government did not

2

granted the request, and on November 6, 2017, Allen filed a supplemental brief in support of his motion to suppress. (ECF No. 38.) The government responded on November 20, 2017. (ECF No. 39.)

After careful consideration of the statements of counsel, the testimony of the witnesses, the evidentiary exhibits, and the entire record in this case, this court submits the following findings of fact and conclusions of law and recommends that the motion to suppress be denied.

I. PROPOSED FINDINGS OF FACT

The government's first witness, Officer Kloek, has worked as a police officer for MPD for approximately seventeen years. (Tr. 10:7-10.) Officer Kloek testified that on March 28, 2016, around 7 a.m., he responded to a call regarding an auto theft at 4840 Bowen Avenue in Memphis, Tennessee. (*Id.* at 10:11-22, 16:25-17:2.) Upon arriving at the residence, Officer Kloek noticed a white truck in the yard and a white Mercury Sable in the driveway. (*Id.* at 11:3-6, 17:3-9.) Officer Kloek stated

---

address Exhibit A or object to it in its Response in Opposition to Defendant's Supplemental Memorandum. (ECF No. 39.)

 The evidence introduced at the hearing indicates that Allen was present at the scene and that he spoke with Detective Stanley before the search took place, thus indicating that Allen had an opportunity to voice an objection to the search but failed to do so. (Tr. 78:10-12, 79:7-81:7, 84:2-19.) Even if the court were to consider Exhibit A as evidence, this would not change the outcome because Exhibit A offers no evidence that Allen objected to the search.

that he met with Candice Burchett ("Burchett") at the residence, who told him that her silver vehicle had been stolen. (*Id.* at 10:24-1.) According to Officer Kloek, Burchett was polite and cooperative. (*Id.* at 11:9-11.) On cross examination, Officer Kloek testified that Allen was also at the house at the 7 a.m. visit, but he was more focused on Burchett since she called in the complaint. (*Id.* at 19:11-23.) Officer Kloek completed the auto-theft report regarding Burchett's stolen vehicle and returned to patrol service. (*Id.* at 11:16.)

Officer Kloek testified that a couple hours later, around 9 a.m., he heard a radio report of a robbery involving a white truck and a white Mercury Sable. (*Id.* at 11:21-12:2, 20:19-21.) Recognizing the descriptions of the vehicles from earlier that morning, Officer Kloek returned to 4840 Bowen Avenue; the white Mercury Sable was still in the driveway, and the white truck was still in the yard. (*Id.* at 12:5-19.) Officer Kloek knocked on the door and asked Burchett if she knew anything about a robbery. (*Id.* at 12:11-13.) According to Officer Kloek, Burchett was not cooperative, so he ceased questioning. (*Id.* at 12:11-15.) Officer Kloek noticed Allen at the residence, but as earlier, his attention was on Burchett. (*Id.* at 12:21-13:9.)

Officer Kloek testified that he left 4840 Bowen Avenue to confer with Officer Saldana, who had responded to the robbery report. (*Id.* at 24:6-25:4.) Officer Kloek and Officer Saldana

4

decided to return to 4840 Bowen Avenue, along with the robbery victim, to conduct a "single shot," a procedure which would give the victim an opportunity to identify whether he recognized anyone at the residence from the robbery. (*Id.* at 13:23-14:8, 25:1-13.) When Officer Kloek returned to 4840 Bowen Avenue to conduct the "single shot," he saw the white Mercury Sable in the driveway but did not see the white truck that had been in the yard. (*Id.* at 33:17-20.) Officer Kloek testified that to conduct the "single shot," he knocked on the door while Officer Saldana and the robbery victim remained out of sight. (*Id.* at 14:4-8, 26:4-23.) Officer Kloek stated that he talked to Burchett on the porch. (*Id.* at 26:16-18.) Officer Kloek then received a signal from Officer Saldana that the robbery victim identified Burchett from the robbery. (*Id.* at 26:21-23.)

Officer Kloek testified that after the positive identification, he handcuffed and detained Burchett in the back of his squad car. (*Id.* at 15:7-9, 26:21-23.) Officer Kloek stated that Burchett remained handcuffed in the back of his squad car for fifteen minutes until the lieutenant arrived on the scene. (*Id.* at 27:10-17.) According to Officer Kloek, the officers who arrived on the scene obtained consent from Burchett to search the residence. (*Id.* at 27:23-24.) About ten minutes after Burchett signed the consent form, Officer Kloek accompanied her into the house as the search was performed.

5

(*Id.* at 28:3-15.)  Officer Kloek testified that approximately thirty minutes passed from the time of the "single shot" when Burchett was initially detained to the time he accompanied her into the house after she consented to the search.  (*Id.* at 31:15-32:9.)

Officer Kloek stated that at some point during the search, Allen emerged from the house.  (*Id.* at 28:21-29:7.)  According to Officer Kloek, Allen was arrested and detained in the rear of a squad car with handcuffs.  (*Id.* at 30:1-2.)

The government's second witness, Officer Saldana, has been a police officer with MPD for eight years.  (*Id.* at 35:17-20.)  Officer Saldana testified that he responded to the 9 a.m. radio dispatch on March 28, 2016, reporting a robbery involving a white pickup truck.  (*Id.* at 35:21-36:2.)  Officer Saldana testified that he was driving northbound on Mendenhall trying to locate the white pickup truck described in the police broadcast, when he saw a white male run into the street flailing his arms.  (*Id.* at 36:3-15.)  Officer Saldana stopped and discovered this was the victim of the robbery.  (*Id.* at 36:15-16.)  The victim told Officer Saldana that he was robbed at Bowen and Mendenhall and then approached and robbed a second time by the same people three blocks up Mendenhall.  (*Id.* at 36:18-22.)  The victim told Officer Saldana that the assailants drove a white Mercury Sable and a white pickup truck.  (*Id.* at 36:25-37:16.)

6

Officer Saldana's testimony regarding the "single shot" was consistent with Officer Kloek's testimony. Officer Saldana testified that, upon arriving at 4840 Bowen Avenue to conduct the "single shot," the victim identified the white Mercury Sable as a car involved in the robbery. (*Id.* at 39:2-3.) Officer Saldana also stated that the victim made a positive identification of Burchett during the "single shot." (*Id.* at 9-15.) After she had been taken into custody, Burchett told Officer Saldana that Allen was not at the residence. (*Id.* at 40:2-8.) Officer Saldana also stated that when Allen eventually exited the house, he was taken into custody. (*Id.* at 46:24-25.)

The government's third witness, Detective Hampton, has worked for MPD for seven years. (*Id.* at 46:9-10.) Detective Hampton testified that when he arrived at 4840 Bowen Avenue, he asked for consent to search the residence from Burchett, who had stated that she was the renter of the property. (*Id.* at 50:6-11.) Detective Hampton performed a utilities check, which revealed that Burchett paid utility bills for 4840 Bowen Avenue. (*Id.* at 50:12-17.) According to Detective Hampton, he and Officer Carlson provided Burchett with a consent form. (*Id.* at 50:21-24.) Detective Hampton testified that Burchett reviewed and signed two consent forms: a consent to search the residence and all outbuildings, witnessed by Officer Carlson, and a consent to search the vehicle, witnessed by Officer Saldana.

7

(*See* Ex. 1; Tr. 50:24.)[3] Detective Hampton testified that Burchett was not combative or aggressive when the officers asked her to sign the consent forms. (Tr. 54:23-55:4.) Detective Hampton stated that Burchett was in the back of the police car when he explained the consent form to her, but she was uncuffed and taken around to the trunk of the car to sign the consent form. (*Id.* at 66:21-67:1.)

Detective Hampton testified that during the ensuing search, he found a lawn mower and a backpack in the garage which the victim identified as his own, and found a revolver in the driver's seat of a vehicle in the garage. (*Id.* at 51:2-11, 64:18-65:1.)

The government's fourth witness, Officer Carlson, also testified that Burchett was calm when the officers asked her to sign the consent form. (*Id.* at 70:20-71:2.) Officer Carlson

---

[3]The consent form signed by Burchett states:

> I, Candice Burchett, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize Det. J. Hampton #12316 and Det. T. Alcover #13028 of Memphis Police Department to conduct a complete search of my premises located at 4840 Bowen, Memphis, TN, 38122, and all outbuildings. This written permission is being given by me to above named persons voluntarily and without threats or promises of any kind.

(Ex. 1.)

8

stated that she found a box of ammunition in a bedroom drawer when she searched the house. (*Id.* at 71:14-15.)

The government's final witness, Detective Stanley, has worked for MPD for eleven years. (*Id.* at 77:13-23.) Detective Stanley testified that he spoke with Allen after he had already been detained in a squad car but before the search of the residence. (*Id.* at 78:10-12, 79:7-81:7, 84:2-19.) Detective Stanley did not recall Allen making any statements to him regarding the search of the residence. (*Id.* at 80:25-81:7.)

## II. PROPOSED CONCLUSIONS OF LAW

As an initial matter, a defendant has standing to challenge the admission of illegally obtained evidence only if the defendant's own constitutional rights were violated. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978). Allen maintains that the search of 4840 Bowen Avenue violates his own Fourth Amendment rights because he was "at least a social guest who was permitted to store personal items at the home." (Mot. Suppress 4, ECF No. 21.) The government concedes that it appears as though Allen was a resident of the home. (Resp. 3, ECF No. 5.) Accordingly, this court finds that Allen has standing to challenge the constitutionality of the search.

Allen raises two primary issues regarding the warrantless search of 4840 Bowen Avenue. First, Allen argues that Burchett's consent was not voluntary and, therefore, was

9

insufficient to overcome the warrant requirement. (Mot. Suppress 5, ECF No. 21.) Second, Allen argues that the police prevented his ability to object to the search, thus violating the rule set out in *Georgia v. Randolph*, 547 U.S. 103 (2006), prohibiting a search based on consent when a co-tenant is present and objecting. (Def.'s Suppl. Mem., ECF No. 38.)

A.  Validity of Burchett's Consent to Search

The government argues that Burchett provided a voluntary consent allowing the police to conduct a warrantless search of 4840 Bowen Avenue, where officers found the firearm and ammunition leading to the current charges against Allen. In opposition, Allen argues that Burchett's consent was not a valid waiver of the warrant requirement because it was coerced and not freely or voluntarily given.

Government officials may conduct a search without a warrant or probable cause based upon an individual's consent, so long as that consent was voluntary. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). When the validity of a warrantless search is based on consent, the government has the burden of proving, through "clear and positive testimony," that the necessary consent was freely and voluntarily given. *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983)("[T]he State has the burden of proving that the necessary consent was obtained and

10

that it was freely and voluntarily given . . . ."). The government's showing must be by a preponderance of the evidence. *United States v. Worley*, 193 F.3d 380, 385 (6th Cir. 1999).

The general test for the voluntariness of consent to search is whether, under the totality of the circumstances, consent was an exercise of free will or whether the free will of the person consenting was overborne. *Schneckloth,* 412 U.S. at 226. The Sixth Circuit described its analytical approach toward determining the validity of consent to search in *United States v. Riascos-Suarez*, 73 F.3d 616 (6th Cir. 1996), abrogated on other grounds, *Muscarello v. United States*, 524 U.S. 125 (1998). There, the court stated that to determine voluntariness of consent, the court should examine: "the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; whether the individual understands his or her constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Id.* at 625; *see also Schneckloth*, 412 U.S. at 226 (listing the same relevant factors); *United States v. Lucas*, 640 F.3d 168, 174 (6th Cir. 2011)(stating the same).

Upon examination of the relevant factors, the court finds that under the totality of the circumstances, Burchett's consent was free and voluntary and did not result from any police-induced duress or coercion. Burchett, who did not appear as a

11

witness to testify as to any duress or coercion, signed the consent to search form, which specifically stated that she had the right to refuse consent. (Ex. 1.) Detective Hampton testified that Burchett read the consent form before signing it. (Tr. 50:21-24). Officer Carlson testified that she and Detective Hampton reviewed the consent form with Burchett and she signed it in their presence. (*Id.* at 70: 20-23.) Moreover, the fact that Burchett was detained in a squad car before giving consent and that Burchett was not free to leave at the time she gave consent does not invalidate her consent. *United States v. Salvo*, 133 F.3d at 943, 953-54 (6th Cir. 1998)(citation omitted)(finding that custody alone is not enough to invalidate an otherwise valid consent to search); *see also Blake v. Knieper*, No. 03-74097, 2009 WL 1689308, at *8 (E.D. Mich. June 16, 2009)(finding that a consent was valid, even when the individual who gave consent was in custody and had been detained for several hours); *United States v. Frost*, 521 F. App'x 484, 487-88 (6th Cir. 2013)(holding that a consent to search was valid where the individual who gave consent was in handcuffs and removed to a police car). Before Burchett signed the consent form, the police removed her handcuffs, allowed her to exit the squad car, and escorted her to the trunk of the car to sign the form. (Tr. 66:21-67:1.) Moreover, Burchett was not aggressive

12

or combative towards the officers at the time of her consenting to the search. (*Id.* at 54:23-55:4.)

Given the totality of the circumstances surrounding the search and the signing of the consent form, this court finds that the government has met its burden to prove that Burchett's consent was free and voluntary.

B.  Applicability of *Georgia v. Randolph*

The court granted the parties additional time to submit briefs regarding the applicability of *Georgia v. Randolph*, 547 U.S. 103 (2006), which held that police may not search a residence based on consent when a co-tenant is present and objecting to the search. Allen argues in his supplemental brief that the officers violated his Fourth Amendment rights by detaining him in a squad car when he exited the house, thereby preventing him from objecting to the search. (Def.'s Suppl. Mem., ECF No. 38.) In their supplemental response, the government argues that the officers did not violate the Fourth Amendment by arresting and detaining Allen because (1) the arrest was lawful, (2) Allen was given an opportunity to object when he spoke with Detective Stanley, and (3) the officers did not have reason to believe Allen had authority to consent to a search based on Burchett's representations and the database search. (Gov't's Suppl. Resp., ECF No. 39.)

13

In *Randolph*, The Supreme Court held that, "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Randolph*, 547 U.S. at 107. There, the husband explicitly refused to give permission for the police to search his house; however, the officer immediately turned to the wife, who provided permission and escorted the police into the house. *Id.* The Court held that police may not search based on the consent of one tenant when a co-tenant is present and objecting. *Id.* at 121. The Court was careful to distinguish between a co-tenant who is present and actually objecting versus a "potential objector, nearby but not invited to take part in the threshold colloquy." *Id.* Thus, if the co-tenant is not present and, therefore, does not object, the police may search. *Id.* Moreover, although police may not remove a co-tenant from the scene so that he is unable to object, police are not required to seek out potential objectors. *Id.* at 121-22. The Court in *Fernandez v. California*, 134 S. Ct. 1126 (2014), further determined that consent by one tenant suffices for a search when a potentially objecting co-tenant is absent, even if the co-tenant is absent due to arrest or detention. *Id.* at 1134-35. As long as the arrest is objectively reasonable, without inquiry into the officers' subjective intent, the potentially objecting co-tenant's absence does not invalidate the consent. *Id.*

14

Here, Allen was not present when Burchett signed the consent form. (*See* Tr. 31:7-8.) Initially, the police were unaware that Allen was still in the house, and pursuant to the rule set forth in *Randolph*, they had no duty to seek him out as a potential objector. *See Randolph*, 547 U.S. at 122. Once Allen emerged from the house, he was taken into custody based on his involvement in the robbery that occurred earlier. This court finds that this was a reasonable detention. (*See id.* at 46:24-25.)

Furthermore, there is no evidence whatsoever that Allen objected or attempted to object to the search. *See United States v. Thompson*, No. 2:14-cr-20298, 2015 WL 2213358, at *5 (W.D. Tenn. May 11, 2015)(internal quotations omitted)(citing *Randolph*, 547 U.S. at 121; *Fernandez*, 134 S. Ct. at 1129)(providing that "the rule does not extend to a potential objector who stands by, mute"); *see also United States v. Stanley*, 351 F. App'x 69 (6th Cir. Nov. 4, 2009)(upholding a consent search where the co-tenant was present on the scene but had invoked his *Miranda* rights and, therefore, did not object to the search). Accordingly, this court finds that the police did not violate Allen's Fourth Amendment rights by arresting and detaining him when he exited the house, Allen did not object to the search, and Burchett's consent was valid.

## II.  RECOMMENDATION

For the reasons expressed above, it is recommended that Allen's motion to suppress be denied in full.

Respectfully submitted this 1st day of December, 2017.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.