# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|                           |   |                      |
|---------------------------|---|----------------------|
| UNITED STATES OF AMERICA, | ) |                      |
|     Plaintiff,            | ) |                      |
|                           | ) | No. 16-cr-20239-SHM-1|
| v.                        | ) |                      |
|                           | ) |                      |
| DEMARIO ALLEN,            | ) |                      |
|     Defendant.            | ) |                      |

## ORDER

Before the Court is the Magistrate Judge's Report and Recommendation (the "Report"), dated December 1, 2017. (ECF No. 40.) The Report recommends that Defendant Demario Allen's Motion to Suppress (ECF No. 21) be denied. (Id. at 165.) Allen filed timely objections to the Report on December 20, 2017. (ECF No. 46.) The same day, the Government stated that it had no objection to the Report's findings of fact or conclusions of law. (ECF No. 47.)

For the reasons stated below, Allen's objections are OVERRULED and the Report is ADOPTED. Allen's Motion to Suppress is DENIED.

**I.  Background**

   **A. Factual Background**

On the morning of March 28, 2016, Officer Marc Kloek of the Memphis Police Department ("MPD") responded to a call for an auto theft at 4840 Bowen Avenue in Memphis, Tennessee ("the Residence").  (Evid. Hr'g Tr., ECF No. 34 at 56:11-22, 62:25-17:2.)  At the Residence, Officer Kloek noticed a white truck in the yard and a white Mercury Sable in the driveway.  (Id. at 57:3-6, 63:3-9.)

Officer Kloek was met at the Residence by Candice Burchett, who told him that her silver vehicle had been stolen.  (Id. at 56:24-1.)  Allen was also present at the Residence.  (Id. at 65:11-23.)  According to Officer Kloek, Burchett was polite and cooperative.  (Id. at 57:9-11.)  When Officer Kloek completed the report about Burchett's stolen vehicle, he returned to patrol service.  (Id. at 57:16.)

Several hours later, Officer Kloek heard a radio report of a robbery involving a white truck and a white Mercury Sable.  (Id. at 57:21-12:2, 66:19-21.)  Recognizing the description of the vehicles he had seen at the Residence, Officer Kloek returned to the Residence and saw a white truck and a white Mercury Sable.  (Id. at 58:5-19.)

Officer Kloek knocked on the door and asked Burchett if she knew anything about a robbery. (Id. at 58:11-13.) Officer Kloek noticed that Allen was at the Residence. (Id. at 58:21-13:9.) According to Officer Kloek, Burchett was not cooperative, so he stopped questioning. (Id. at 58:11-15.) Officer Kloek left the Residence to confer with Officer Manuel Saldana, who had responded to the robbery report. (Id. at 70:6-25:4.)

Officers Kloek and Saldana returned to the Residence with the robbery victim to conduct a "single shot" -- a procedure that allows the victim an opportunity to identify a perpetrator after an incident. (Id. at 59:23-14:8, 71:1-13.) The victim identified Burchett from the robbery. (Id. at 72:21-23.)

After Burchett had been positively identified by the robbery victim, she was handcuffed and detained in the back of Officer Kloek's squad car for approximately fifteen minutes until a lieutenant arrived. (Id. at 73:10-17.) Based on Burchett's statements, the officers concluded that Allen was no longer at the Residence. (Id. at 79:19-25, 86:6-8.) Officer Kloek also noticed the white truck that had been on the property was gone. (Id. at 79:17-20.)

Shortly after Burchett had been detained, several of Burchett's family members arrived to retrieve Burchett's children. (Id. at 91:3-5, 88:15-22.)

Lieutenant Greenleaf[1] then arrived at the Residence. He contacted Allen by telephone and attempted to convince Allen to return to the Residence. (Id. at 91:6-19.) Allen then emerged from the Residence, speaking on the telephone with Lieutenant Greenleaf. (Id. at 91:21-25.) Officer Saldana and another officer took Allen into custody as Allen walked out of the Residence. (Id. at 92:24-25, 93:2-3.) Allen was handcuffed and placed in the back of a squad car. (See id. at 102:25; 120:16-18; 125:11-13.) Burchett's children also emerged from the Residence. (Id. at 92:8-12.)

Detective John Hampton and Officer Theresa Alcover arrived at the Residence. (Id. at 102:19-25, 103:1-3.) By then, three squad cars, three officers, and two lieutenants were at the Residence. (Id. at 115:24-25, 116:1-5.)

Detective Hampton determined through a utility database that Burchett paid the utilities at the Residence. (Id. at 96:11-19.) Burchett also told the officers that she rented the Residence. (Id. at 106:6-7.)

---

[1] Lieutenant Greenleaf's first name was not given during the hearing or in the parties' briefs.

4

Officer Joshua Stanley arrived at the Residence. (Id. at 124:5-23.) He spoke with Allen while Allen was detained. (Id. at 125:11-13.)[2] Officer Stanley does not recall Allen objecting to the search of the Residence. (Id. at 127:1-7; 130:2-12.)

While Allen was detained, Detective Hampton and Officer Alcover spoke with Burchett, asked for consent to search the Residence, and provided Burchett a consent-to-search form. (Id. at 96:20-24.) After describing the contents of the form to Burchett, the officers removed Burchett's handcuffs. (Id. at 112:23-25.) Without asking any questions or becoming observably agitated, Burchett reviewed and signed the consent forms to search the Residence and vehicles. (Id. at 96:24, 100:23-25, 101:1-4.)

Burchett then accompanied the officers in searching the Residence. (Id. at 61:7-24.) Officers found articles matching the description of those stolen from the robbery victim and a firearm and ammunition in the Residence and garage. (See id. at 97:4-8, 100:20-22, 101:14-19, 117:14-17.)

---

[2] Allen attached to his Supplemental Memorandum a copy of Officer Stanley's supplemental report in which he describes speaking with Burchett, who told him that she lived at the Residence with her boyfriend, Allen. (ECF No. 38-1 at 157.)

5

**B. Procedural Background**

On October 27, 2016, the grand jury returned an indictment charging Defendant Demario Allen with possession of a firearm and ammunition as a convicted felon in violation of 18 U.S.C. § 922(g). (Indictment, ECF No. 1.) The charge arises from the warrantless search of the Residence on March 28, 2016.

On June 30, 2017, Allen filed his Motion to Suppress. (ECF No. 21.) The Government responded on July 14, 2017. (ECF No. 23.)

United States Magistrate Judge Diane K. Vescovo held a hearing on September 27, 2017. (Min. Entry, ECF No. 33.) At the hearing, she ordered the parties to file supplemental briefing. (Id.)

Allen filed his supplemental brief on November 6, 2017. (ECF No. 38.) The Government responded on November 20, 2017. (ECF No. 39.)

The Magistrate Judge submitted the Report on December 1, 2017. (ECF No. 40.)

Allen filed a timely objection on December 20, 2017. (ECF No. 46.) The same day, the Government stated that it had no objection to the Report's findings of fact or conclusions of law. (ECF No. 47.)

## II.  Jurisdiction & Standard of Review

A district court has the authority to "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion."  28 U.S.C. § 636(b)(1)(B).

The district court has appellate jurisdiction over any decisions the magistrate judge issues pursuant to such a referral.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(a).  The standard of review the district court applies depends on the nature of the matter considered by the magistrate judge. "[U]pon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."  United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citing 28 U.S.C. § 636(b)(1)); United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001)).

The Court need not review -- under a de novo or any other standard -- those aspects of a report and recommendation to which no objection is made.  Thomas v. Arn, 474 U.S. 140, 150-52 (1985).  Objections to any part of a Magistrate Judge's disposition "must be clear enough to enable the district court to discern those issues that are dispositive and contentious." Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); see also

Arn, 474 U.S. at 147 (stating that the purpose of the rule is to "focus attention on those issues . . . that are at the heart of the parties' dispute."). A general, frivolous, or conclusory objection will be treated as if no objection had been made. Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991); see also Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986) ("[T]he district court need not provide de novo review where the objections are '[f]rivolous, conclusive or general.'" (internal quotation marks omitted)).

**III. Analysis**

Allen objects to three of the Magistrate Judge's findings of fact, the Magistrate Judge's omission of some facts, and two of the Magistrate Judge's conclusions of law. (ECF No. 46.)

**A. Objections to Findings of Fact**

Allen objects to three of the Magistrate Judge's findings of fact and her omission of other facts. (ECF No. 46.) First, Allen contends the Magistrate Judge found that Burchett was detained in the squad car for fifteen minutes, when she was actually detained between fifteen and twenty minutes. (Id. at 186.) Second, Allen contends that the Magistrate Judge found Officer Kloek testified he arrested Allen prior to placing Allen in the squad car, when actually Allen was not officially

8

under arrest at that time. (Id.) Third, Allen contends that the Magistrate Judge found the officers' testimonies about the "single shot" identification procedure was consistent, when there were multiple inconsistencies. (Id. at 187.) Fourth, Allen contends that the Magistrate Judge omitted facts from the Report. (Id. at 187-88.) None of the facts Allen disputes are material to the Magistrate Judge's conclusion that Allen's Fourth Amendment rights were not violated.

Allen's objections to the Magistrate Judge's findings of facts and omission of facts are OVERRULED. The Report's findings are ADOPTED.

**B. Objections to Legal Conclusions**

Allen objects to two of the Magistrate Judge's conclusions of law. (ECF No. 46 at 189-92.) First, Allen argues the Magistrate Judge erred in concluding the officers did not violate "the tenets of Georgia v. Randolph by . . . circumventing [Allen's] ability as a physically present cotenant to object to the search." (Id. at 189.) Second, Allen argues the Magistrate Judge erred in concluding that Burchett's consent was not obtained through duress and coercion. (Id. at 192-93.)

9

**1. Application of <u>Georgia v. Randolph</u>**

Allen argues that the search of the Residence was unlawful because the officers did not obtain his consent. (ECF No. 46 at 189-92.) Allen also contends the officers prevented him from objecting to the search because Allen was sequestered from Burchett when her consent to search was requested, and because Officer Stanley would have silenced Allen even if Allen had tried to object. (<u>Id.</u> at 191-92.)

The Report concludes that "[t]he evidence introduced at the hearing indicates that Allen was present at the scene and that he spoke with Detective Stanley before the search took place, thus indicating that Allen had an opportunity to voice an objection to the search but failed to do so." (ECF No. 40 at 164 n.2.) The Report concludes that "Allen was not present when Burchett signed the consent form" because he was being reasonably detained. (<u>Id.</u> at 177.)

"The Fourth Amendment recognizes a valid warrantless entry and search of premises when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." <u>Georgia v. Randolph</u>, 547 U.S. 103, 106 (2006). A narrow exception to this rule occurs when a physically present inhabitant expressly

objects to a search. Id. at 122-23; accord Fernandez v. California, 134 S.Ct. 1126, 1129 (2014) ("In Georgia v. Randolph, we recognized a narrow exception to this rule, holding that the consent of one occupant is insufficient when another occupant is present and objects to the search." (citation omitted)). A co-occupant is not physically present if he or she "is absent due to a lawful detention or arrest." Fernandez, 134 S. Ct. at 1134.

If the potentially objecting co-tenant is present, the exception expressed in Randolph "does not extend to a 'potential objector' who stands by, mute." United States v. Kearse, No. 1:11-cr-116, 2012 WL 876774, at *5 (E.D. Tenn. Feb. 21, 2012), report and recommendation adopted 2012 WL 876774 (Mar. 12, 2012) (quoting Randolph, 547 U.S. at 121). The Sixth Circuit addressed this issue in United States v. Stanley, 351 F. App'x 69 (6th Cir. 2009). There, the defendant argued the district court erred when it found the defendant's girlfriend validly consented to the search of the apartment. Stanley, 351 F. App'x at 72. The defendant argued that, because he was present at the apartment and the subject of the arrest warrant, the officers should have tried to obtain his consent before asking the girlfriend for her consent. Id. The court contrasted the situation before it -- where the defendant had

not refused consent and was present in the apartment when the girlfriend gave her consent to search -- with other cases where defendants had expressly refused to give consent. Id. (citing Randolph and United States v. Murphy, 516 F.3d 1117 (9th Cir. 2008)). Because the defendant did not expressly refuse consent, admitted he was present in the apartment when his girlfriend gave consent, and did not object after she gave her consent, the court concluded that the officers had legal authority to search the apartment. Id.

Although Allen was lawfully detained in a squad car while Burchett consented to the search, he was near the searched premises. Allen did not expressly refuse consent, and he did not object after Burchett gave her consent. The officers' search of the Residence did not violate Allen's Fourth Amendment rights. The Magistrate Judge did not err in concluding Burchett's consent to search gave the officers the legal authority to search the Residence. Allen's objection is OVERRULED. The Report's conclusion as to the applicability of Randolph is ADOPTED.

### 2. Burchett's Consent

Allen argues that Burchett's consent to search the Residence was obtained through "subtly coercive police tactics

used against a person who was already in a vulnerable subjective state of mind," because:

> at least six officers, two lieutenants, and three squad cars were present at the scene by the time Ms. Burchett was asked for consent. Five officers were in her presence when she gave consent. She had also just witnessed her boyfriend voluntarily leave the house, get seized, placed in handcuffs, and stuffed into the back of a squad car himself. [And s]he knew there were children in the house.

(ECF No. 46 at 193.)

A search conducted pursuant to valid consent is a well-recognized exception to the general warrant requirement of the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). A warrantless search may be conducted where a person with a privacy interest in the place to be searched gives free and voluntary consent. United States v. Elkins, 300 F.3d 638, 647 (6th Cir. 2002). Consent is voluntary when it is "unequivocal, specific, intelligently given, and free from duress or coercion." United States v. Beauchamp, 659 F.3d 560, 571 (6th Cir. 2011). "Whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all of the circumstances." Schneckloth, 412 U.S. at 227; see also Beauchamp, 659 F.3d at 571. The government must establish voluntariness by a preponderance of

the evidence, with evidence that is clear and positive. Beauchamp, 659 F.3d at 571.

There are no bright line rules to follow when assessing the totality of the circumstances, but several factors are considered. Id. at 572. "First, a court should examine the characteristics of the accused, including the age, intelligence, and education of the individual; whether the individual understands the right to refuse to consent; and whether the individual understands his or her constitutional rights." Id. A court should also consider "the details of the detention, including the length and nature of detention; the use of coercive or punishing conduct by the police; and indications of more subtle forms of coercion that might flaw [an individual's] judgment." Id. (internal citations omitted). The defendant "must show more than a subjective belief of coercion, but also some objectively improper action on the part of the police in order to invalidate consent." Elkins, 300 F.3d at 648.

Police coercion can be physical or psychological. Arizona v. Fulminante, 499 U.S. 279, 285-89 (1991). However, "not all psychological tactics are unconstitutional." Ledbetter v. Edwards, 35 F.3d 1062, 1067 (6th Cir. 1994). "[T]here is nothing inherently wrong with efforts to create a favorable

climate for a confession," and "'neither 'mere emotionalism and confusion' nor mere 'trickery' will alone necessarily invalidate a confession." Id. at 1069 (quotations and citations omitted); see McCall v. Dutton, 863 F.2d 454, 460 (6th Cir. 1988).

Lack of voluntary consent is dictated by the totality of the circumstances. See, e.g., Turk v. Comerford, 488 F. App'x 933, 942 (6th Cir. 2012) ("[A] reasonable factfinder could conclude that the officers' threatening jail time and pounding on the door so hard that the glass shook was coercive and therefore vitiated any consent that Turk gave."); United States v. Worley, 193 F.3d 380, 386 (6th Cir. 1999) (finding lack of unequivocal consent where defendant's statement to officers that "You've got the badge, I guess you can [search]" was likely influenced by defendant's belief that refusing consent was futile, that he had no choice but to acquiesce, where defendant was not informed of his right to refuse consent, and was accosted in a busy airport crowded with people); United States v. Tillman, 963 F.2d 137, 143 (6th Cir. 1992) (finding lack of voluntary consent where defendant was told he was not free to leave and that if he did not consent he would have to wait two to three hours in a small, crowded room for police to obtain a search warrant). Consent was found to have been

15

coerced in United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998), when the individual was detained one and a half hours prior to giving consent, during which officers threatened that if the individual did not sign a consent form, everyone in the house would go to jail and that his child would be taken into government protective custody. Coercion was also found in United States v. Alvarado, No. 16-20748, 2017 WL 2438787, at *6 (E.D. Mich. June 6, 2017), where the defendants were awakened by police knocking at their door, defendants were greeted outside their door by a K9 unit and at least five uniformed DEA agents who aimed their weapons at the defendants' home, and officers sought consent multiple times in different ways until the defendants were tired of fighting and being ignored.

The Magistrate Judge concluded that "under the totality of the circumstances, Burchett's consent was free and voluntary and did not result from any police-induced duress or coercion." (ECF No. 40 at 173.)

Burchett did not testify at the suppression hearing. She did not provide an affidavit stating that she confessed under duress or coercion. The record does not suggest that Burchett's age, intelligence, or education would hinder her ability to understand her constitutional rights. She had filed

16

a police report on the day of the search and intelligently described her claim.

Before consenting to the search, Burchett was detained and handcuffed in a squad car for fifteen to twenty minutes. (Evid. Hr'g Tr., ECF No. 34 at 73:10-17.) Officer Carlson testified that she and Detective Hampton reviewed the consent form with Burchett and that Burchett signed it in their presence. (Id. at 70:20-23.) Detective Hampton testified that Burchett read the consent form before signing it. (Id. at 50:21-24). Officer Carlson also testified that Burchett's demeanor was calm and quiet. (Id. at 117:1-2.) The consent form Burchett signed reads, "I, Candice Burchett, having been informed of my constitutional right not to have a search made of the premises hereinafter mentioned without a search warrant and of my right to refuse to consent to such a search, hereby authorize. . . . This written permission is being given by me to the above named person voluntarily and without threats or promises of any kind." Hr'g Ex. No. 1. Before Burchett signed the consent form, the police removed her handcuffs, allowed her to leave the squad car, and escorted her to the trunk of the car to sign the form. (Evid. Hr'g Tr., ECF No. 34 at 112:21-113:1.) Allen does not contend there was any overt act or threat of force against Burchett.

The record demonstrates that multiple officers were at the scene when Burchett signed the consent form. Three officers witnessed Burchett sign the consent form. See Hr'g Ex. No. 1. The record does not demonstrate that those officers brandished their weapons, activated their lights or sirens, ordered anyone to the ground, spoke in excited or forceful tones, surrounded the Residence in a threatening manner, pounded on the door, or made unlawful threats.

Burchett was detained for investigative purposes and was not free to leave when she signed the consent form. (Evid. Hr'g Tr., ECF No. 34 at 113:4-5.) Her custody by itself, however, does not invalidate her consent to search. United States v. Salvo, 133 F.3d 943, 953 (6th Cir. 1998) (citing United States v. Watson, 423 U.S. 411, (1976)).

Burchett's minor children were in the house and Allen had been arrested. The record does not demonstrate that Burchett's concern for her children or for Allen caused her such distress as to invalidate her consent to search. (Evid. Hr'g Tr., ECF No. 34 at 88:17-22.) Burchett's demeanor was calm and quiet. (Id. at 117:1-2.) Officer Saldana testified that Burchett's mother and sister arrived on the scene to tend to the children shortly after the officers had taken Burchett into custody. (Id. at 88:17-22, 91:3-5.) Allen had voluntarily left the

18

house and been taken into custody without resistance. (Id. at 91:18-24.) The record does not demonstrate that there was any "[h]ostile police action against [Burchett's] family." Ivy, 165 F.3d at 403.

Burchett's demeanor while signing the consent form and accompanying the search of the Residence also does not suggest that Burchett thought withholding consent would be futile. The officers had not entered the Residence before receiving Burchett's consent. See United States v. Haynes, 301 F.3d 669, 683 (6th Cir. 2002) (discussing invalidity of consent had defendant felt withholding consent would be futile after previous search had occurred); United States v. Starnes, 501 F. App'x 379, 389 (6th Cir. 2012) (finding consent invalid where defendant testified that she believed refusal would have been futile, because by the time she was asked to sign the consent form, the officers were searching the premises). Burchett did not say anything to indicate that her consent was given because she felt it futile to resist the officers' request, or that she was merely acquiescing to their assertion of authority.

Under the totality of the circumstances, Burchett provided consent to search that was "unequivocal, specific, intelligently given, and free from duress or coercion." Beauchamp, 659 F.3d at 571. The Magistrate Judge did not err

in her conclusion that Burchett consented voluntarily.  Allen's objections are OVERRULED.  The Report as to Burchett's consent is ADOPTED.

**IV. Conclusion**

For the foregoing reasons, Allen's objections are OVERRULED, the Report is ADOPTED, and Allen's Motion to Suppress is DENIED.

So ordered this 30th day of January, 2018.

                                        */s/ Samuel H. Mays, Jr.*
                                        SAMUEL H. MAYS, JR.
                                        UNITED STATES DISTRICT JUDGE